UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Case No. _____

| | |
|---|---|
| SRM GROUP, INC., a Georgia corporation, and SURESH PRAHBU, | **COMPLAINT PETITION & APPLICATION** |
| Plaintiffs, | |
| v. | **9 U.S.C. § 4** |
| CIC SERVICES, LLC, a Tennessee company, SEAN G. KING, THOMAS N. KING, BRYAN RIDGWAY, and SHAWN HOLLAND, | **9 U.S.C. § 10** |
| | **28 U.S.C. § 2201** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

_____/

SRM Group, Inc., and Suresh Prabhu, by and through undersigned counsel bring this complaint against CIC Services, LLC ("CIC") and Sean G. King, Thomas N. King, Bryan Ridgway and Shawn Holland (the "Individual Defendants") seeking rescission, damages, vacatur, and a declaration, and they state as follows:

1.  This action arises out of the Defendants' material breach of an agreement to arbitrate (the "Arbitration Agreement") warranting rescission and damages and an award resulting in grounds for vacatur, modification, and rehearing. The Arbitration Agreement appears in one of several contracts that the Defendants induced the Plaintiffs into (attached as Exhibit 1).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action in diversity (28 U.S.C. §1332(a)) in that all of the Plaintiffs are citizens of Georgia and all of the Defendants are citizens of Tennessee and thus complete diversity exists, and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district (28 U.S.C. §1391(b)(2)).

## PARTIES

3.     Plaintiff SRM Group, Inc., is a Georgia corporation with its principal place of business in Atlanta, Fulton County, Georgia.

4.     Plaintiff Suresh Prabhu is an individual who owns substantially all of SRM Group, Inc., and resides in Atlanta, Fulton County, Georgia.

5.     Defendant CIC Services, LLC, is a Tennessee limited liability company with its principal place of business in Knoxville, Tennessee. The Plaintiffs seek service on this defendant in two manners: (i) by the marshal in the Eastern District of Tennessee on registered agent Bryan D. Ridgway, whose address as registered agent is 2051 Willow View Lane, Knoxville, Tennessee, 37922 (and who may also be found at CIC's place of business, which is 9721 Cogdill Road, Suite 202, Knoxville, Tennessee, 37932); and (ii) by the marshal in the Middle District of Tennessee on attorneys Stites and Harbison, PLLC, 401 Commerce Street, Suite 800, Nashville, Tennessee, 37219.

6.      Defendant Sean G. King is a Tennessee resident. The Plaintiffs seek service on this defendant in <u>two</u> manners: (i) by the marshal in the Eastern District of Tennessee at the defendant's residence, located at 507 Smith Road, Knoxville, Tennessee, 37934, or at his place of business, located at 9721 Cogdill Road, Suite 202, Knoxville, Tennessee, 37932; <u>and</u> (ii) by the marshal in the Middle District of Tennessee on attorneys Stites and Harbison, PLLC, who are located at 401 Commerce Street, Suite 800, Nashville, Tennessee, 37219.

7.      Defendant Thomas N. King is a Tennessee resident. The Plaintiffs seek service on this defendant in <u>two</u> manners: (i) by the marshal in the Eastern District of Tennessee at the defendant's place of business, located at 9721 Cogdill Road, Suite 202, Knoxville, Tennessee, 37932; <u>and</u> (ii) by the marshal in the Middle District of Tennessee on attorneys Stites and Harbison, PLLC, who are located at 401 Commerce Street, Suite 800, Nashville, Tennessee, 37219. who may be found at his place of work, CIC Services, LLC, 9721 Cogdill Road, Suite 202, Knoxville, Tennessee, 37932.

8.      Defendant Bryan Ridgway is a Tennessee resident. The Plaintiffs seek service on this defendant in <u>two</u> manners: (i) by the marshal in the Eastern District of Tennessee at the defendant's residence, located at 2051 Willow View Lane, Knoxville, Tennessee, 37922, or at his place of business, located at 9721 Cogdill Road, Suite 202, Knoxville, Tennessee, 37932; <u>and</u> (ii) by the marshal in the Middle District of Tennessee on attorneys Stites and Harbison, PLLC, who are located at 401 Commerce Street, Suite 800, Nashville, Tennessee, 37219, who may be found at his

place of work, CIC Services, LLC, 9721 Cogdill Road, Suite 202, Knoxville, Tennessee, 37932.

9.      Defendant Shawn Holland is a South Carolina resident.  The Plaintiffs seek service on this defendant in two manners: (i) by the marshal in the District of South Carolina at 2068 Atlantic Avenue, Sullivan's Island, South Carolina, 29482, which is either his residence or his principal place of business or both; and (ii) by the marshal in the Middle District of Tennessee on attorneys Stites and Harbison, PLLC, who are located at 401 Commerce Street, Suite 800, Nashville, Tennessee, 37219.

## MATERIAL FACTS

10.     As part of a conspiracy perpetrated by a number of individuals and entities not party to this action, the Defendants induced the Plaintiffs into a business relationship that proved to be a tax scam.

11.     The tax scam is described in detail in notices issued by the Internal Revenue Service, including the IRS's 2015 Dirty Dozen List, the IRS's Notice 2016-66, and the IRS's 2019 Settlement Offer, attached as Exhibit 2, Exhibit 3, and Exhibit 4.

12.     The victims of the scam were both the Plaintiffs and the United States Department of the Treasury.

13.     Upon learning the truth, the Plaintiffs demanded arbitration of Defendant CIC and filed a lawsuit against the Individual Defendants and other co-conspirators, seeking damages and other relief in connection with the fraudulent scheme.

14.    The Plaintiffs' demand commenced an arbitration proceeding in Tennessee (the "Tennessee Arbitration Proceeding") pursuant to the Arbitration Agreement, which provides:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such solution with a period of 60 days, then, upon notice by either party to the other, any claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise and in their capacities as such or otherwise, and any claim or dispute related to this agreement or the relationship or duties contemplated under this contract, including the validity of this arbitration clause, shall be resolved by binding arbitration by the American Arbitration Association, under the Arbitration Rules then in effect. Any award of the arbitrator(s) may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed at any office of the American Arbitration Association or at Corporate Headquarters, 335 Madison Avenue, Floor 10, New York, New York 10017-4605. Telephone: 212-716-5800, Fax: 212-716-5905, Website: www.adr.org. This agreement shall be interpreted under the Federal Arbitration Act.

Exh. 1 at pp. 6-7.

15.    The Plaintiffs filed their lawsuit against the Individual Defendants and others in the State Court of Fulton County (the "Georgia Lawsuit").

16.    By further agreement (attached as Exhibit 5), the Individual Defendants were dismissed from the Georgia Lawsuit and joined the Tennessee

Arbitration Proceeding with CIC after they and CIC insisted that they were entitled to enforce the arbitration agreement.

17.    Another defendant in the Georgia Lawsuit, Capstone Reinsurance Company, Ltd., pointed out an arbitration clause in certain agreements to which it was a party, and the Plaintiffs commenced a separate arbitration proceeding against Capstone, in Alabama (the "Alabama Arbitration Proceeding").

18.    Despite insisting on the advantages afforded them by enforcement of the Arbitration Agreement, the Defendants thereafter sought to deprive the Plaintiffs of its benefits. Despite purporting to forego the advantages afforded them by litigation (so that the Plaintiffs would likewise forgo them), the Defendants thereafter sought to enjoy the benefits of litigation while ensuring that the Plaintiffs were deprived of them. Specifically:

    a.    Following entry of an award by the arbitrator, the Defendants filed a lawsuit in state court in Tennessee seeking damages that the arbitrator expressly denied them.

    b.    During and after the arbitration proceeding, the Defendants aggrieved the Plaintiffs by repeatedly threatening the Plaintiffs with litigation, including the lawsuit that they eventually commenced.

    c.    During and after the arbitration proceeding, the Defendants continued to enjoy the benefits of litigation while depriving the Plaintiffs of those benefits by coordinating with their former co-defendants to provide one another with information obtained in each other's proceedings even as the

Plaintiffs' ability to obtain information from the various respondents, defendants, and third parties was circumscribed by their own compliance with the rules, rulings, and their own promises.

       d.    During the arbitration proceeding, the Defendants breached the covenant of good faith and fair dealing by failing and refusing to comply with applicable rules, rulings, and their own promises, including but not limited to their obligations with respect to the pre-hearing exchange and production of information.

       e.    After the arbitration proceeding, the Defendants breached the covenant of good faith and fair dealing by failing and refusing to comply with applicable rules, rulings, and their own promises, including their obligations with respect to the private resolution of disputes.

19.    The result was that the Defendants utilized the Arbitration Agreement deceptively. Because the Defendants utilized the Arbitration Agreement deceptively, their Defendants' enforcement of it served as a continuation of the fraudulent scheme.

20.    The Plaintiffs did not learn of the material facts surrounding the Defendants' improper utilization until sometime following entry of an award in the Tennessee Arbitration Proceeding.

21.    By then, the Defendants' conduct had impaired the arbitrator's ability to make an award in accordance with the Arbitration Agreement and that is not proper pursuant to Section 10(a) of the Federal Arbitration Act (9 U.S.C. § 10(a)).

22.     The award depends upon the arbitrator's exceeding of his powers, among other infirmities. Specifically:

a.      The arbitrator enforced an indemnification provision that appeared in certain agreements as an exculpatory clause, even though as such it was unenforceable under Tennessee law (and pursuant to which clause the Defendants seek further benefits in the Tennessee Lawsuit). Specifically, he enforced the following provision:

> To the fullest extent permitted by Law, CLIENT shall defend, indemnify and hold harmless MANAGER and its respective directors, officers, agents, employees, partners, owners and affiliates or assigns, whether in their capacity as such or otherwise (collectively, the "MANAGER lndemnitees"), from and against all liabilities, damages, claims, demands, judgments, penalties, losses, costs, expenses, suits, action s or proceedings (including reasonable fees and disbursements of counsel) resulting from (a) the violation of any Law by CLIENT or RELATED ENTITIES; or (b) any allegation by any person or governmental or private entity that MANAGER or MANAGER lndemnitees provided legal, tax, or accounting advice or opinions to CLIENT or RELATED ENTITIES by virtue of the services provided hereunder; (c) any allegation by any person or governmental or private entity that CLIENT did not need or desire the amounts or types of insurance policies that it purchased from the CIC at any time or that such policies were improperly priced or that the CIC was not a valid insurance company; or (d) arising as a result of or in connection with any failure on the part of CLIENT or any RELATED ENTITY to perform its obligations under this Agreement or the law or any negligent acts or omissions or willful misconduct of CLIENT or any RELATED ENTITY or anyone acting on its behalf (other than MANAGER or a MANAGER Indemnitee); provided, however, that CLIENT shall not be required to reimburse or indemnify the MANAGER or any MANAGER lndemnitee for any loss or claim to the extent such loss or claim is due to the violation of Law or willful misconduct of MANAGER or such MANAGER Indemnitee, MANAGER Indemnitees and RELATED PARTIES are intended to be third parties beneficiaries of this Agreement.

Exh. 1 at pp. 8-9.

      b.    In addition to exculpating the Defendants, this clause required the Plaintiffs to maintain the Defendants' artifice, including vis a vis the IRS.

23.    The Defendants' conduct is impairing the ability of the arbitrator in the Alabama Arbitration Proceeding to make an award in accordance with the arbitration agreement applicable there and that is not proper pursuant to Section 10(a) of the Federal Arbitration Act (9 U.S.C. § 10(a)).

24.    As a result of the Defendants' conduct, the Plaintiffs have incurred and will continue to incur damages, including but not limited to special damages.

25.    The Plaintiffs returned whatever benefits they received under their contractual relationships with the Defendants, including by amending their tax returns and paying back taxes with interest. The Plaintiffs received no benefits under the Arbitration Agreement itself because the Defendants deprived them of those benefits.

26.    The Defendants' conduct resulted in material breach of the agreement warranting rescission and an award of damages, which the Plaintiffs seek in Count 1, below.

27.    The Defendants' conduct resulted in an award that must be vacated pursuant to Section 10(a) of the Federal Arbitration Act (9 U.S.C. § 10(a)), which vacatur the Plaintiffs seek in Count 2, below.

28.     The Defendants' conduct and the improper award give rise to the need for a declaratory judgment regarding the Plaintiffs' obligations under the exculpatory clause and with respect to the IRS, as set forth in Count 3, below.

29.     The Defendants have acted in bad faith, have been stubbornly litigious, and have caused the Plaintiffs unnecessary trouble and expense, which warrants an award of litigation expenses, as set forth in Count 4, below.

## COUNT 1
## BREACH OF AGREEMENT TO ARBITRATE
## 9 U.S.C. § 4

30.     The Plaintiffs re-state the allegations of Paragraphs 1-29 for purposes of this Count as if fully set forth herein.

31.     The Federal Arbitration Act authorizes a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties[.]" 9 U.S.C. § 4.

32.     The Plaintiffs and the Defendants were parties to a contract, which was the Arbitration Agreement entered into on September 26, 2014.

33.     The Defendants breached the Arbitration Agreement.

34.     The Defendants' breach was material.

35.     The Plaintiffs tendered all benefits back from whence they came.

36.     The Plaintiffs are entitled to rescission of the Arbitration Agreement and damages in connection with same.

## COUNT 2
## VACATUR OF ARBIITRATION AWARD
## 9 U.S.C. § 10

37.    The Plaintiffs re-state the allegations of Paragraphs 1-29 for purposes of this Count as if fully set forth herein.

38.    Section 10 of the FAA provides in pertinent part:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>> (1) where the award was procured by corruption, fraud, or undue means;
>> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
> (b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a).

39.    The award entered as a result of the Tennessee Arbitration Proceeding was procured by undue means, and the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

40.    The Defendants' conduct caused or contributed to the failure of the award to comply with the requirements of Section 10 of the FAA.

11

41.     The Plaintiffs are entitled to an order vacating the award.

## COUNT 3
## DECLARATORY JUDGMENT
## 2 U.S.C. § 2201

42.     The Plaintiffs re-state the allegations of Paragraphs 1-29 for purposes of this Count as if fully set forth herein.

43.     Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 2 U.S.C. § 2201.

44.     An actual and justiciable controversy exists between the Plaintiffs and the Defendants concerning whether the Defendants may enforce the exculpatory clause set forth in their agreements and whether the Plaintiffs must maintain the artifice of the Defendants' fraudulent scheme.

45.     The Plaintiffs as interested parties seek a declaration of their rights and legal relations.

## COUNT 4
## LITIGATION EXPENSES
## O.C.G.A § 13-6-11

46.     The Plaintiffs re-state the allegations of Paragraphs 1-29 for purposes of this Count as if fully set forth herein.

47.   The Defendant have acted in bad faith, have been stubbornly litigious, and have caused the Plaintiffs unnecessary trouble and expense.

WHEREFORE, Plaintiffs, SRM Group, Inc., and Suresh Prabhu, pray for judgment as follows:

A.   Rescinding the Arbitration Agreement;

B.   Awarding damages to the Plaintiffs to compensate them for the injuries proximately caused by the Defendants' conduct;

C.   Declaring that the Plaintiffs are not bound by the terms of the exculpatory clause and the Defendants may not require the Plaintiffs to maintain the artifice of their fraudulent scheme;

D.   Awarding the Plaintiffs their litigation expenses;

E.   Awarding such other relief as the Court deems appropriate and just.

Dated:  January 25, 2020

GRADDY LAW LLC
Counsel for Plaintiffs
/s/   J. Elizabeth Graddy
Georgia Bar No. 056838
3355 Lenox Road—Suite 750
Atlanta, Georgia 30326
Telephone: (404) 863-8789
jegraddy@graddylegal.com